INDEPENDENT PIER CO. v. CHARLES WARNER CO. GULF REFINING CO. v. SAME. THE GULFTRADE.

Circuit Court of Appeals, Third Circuit.
June 7, 1927.

Nos. 3633, 3634.

Collision ⬩95(7) —Tug towing gravel scows and steamship held both at fault in collision of steamship and tow.

Evidence *held* to show that tug and steamship were both at fault in collision of steamship with flotilla of sand and gravel scows in tow of tug.

Appeals from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Libel by the Charles Warner Company against the steamship Gulftrade, of which the Gulf Refining Company is claimant, the Independent Pier Company, owner of the steam tug Triton, and another. From a decree for libelant, the named respondents appeal. Decree modified, and, as modified, affirmed.

Biddle, Paul, Dawson & Yocum, of Philadelphia, Pa., and Burlingham, Veeder, Masten & Fearey, of New York City (H. Alan Dawson, of Philadelphia, Pa., and Chauncey I. Clark, of New York City, of counsel), for appellant Gulf Refining Co.

Howard M. Long, of Philadelphia, Pa., for appellant Independent Pier Co.

Acker, Manning & Brown, of Philadelphia, Pa. (Everett H. Brown, Jr., of Philadelphia, Pa., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. This case grows out of a collision between the steamship Gulftrade and a flotilla of sand and gravel scows, which took place on the Schuylkill river, just off the Delaware river. The collision took place in broad daylight and under navigable conditions which made it really inexcusable and inexplicable, except through the fault of those concerned. Both the four scows under tow and the Gulftrade, following, were coming up the Delaware river to round into the Schuylkill river. The theory of the Gulftrade was that, when the collision occurred, she was in the channel, and that the Taurus, which was towing the scows, took a sheer and drove into her. The theory of the scows was that they were in proper place over near the west bank of the Schuylkill, and while they were in that position the Gulftrade took a sheer and drove into them.

The trial judge held neither sheer theory was supported, and we are of opinion he was right. It is entirely unreasonable to believe that either party took the sheer charged against it. It is unreasonable to suppose that the Taurus, if she and her tow were out of the channel, took a sheer to get into it; and it is equally unreasonable to believe that, if the Gulftrade, accompanied by the Triton and the Churchman, was in the channel, it took a sheer out of it and ran into the scows. The court below held the Gulftrade in fault, a conclusion which commends itself to us; but it found the scows without fault, a conclusion which does not commend itself to us, as we find both parties in fault, and are of opinion the decree below should be modified, to the extent of so holding and a dividing of damages equally between the two parties, with allowance of costs to neither. Our reasons for so holding we now state, and which it seems to us the proofs and circumstances warrant:

Both parties were coming up the Delaware. There was some wind with them, as well as the tide. Therefore we have a situation where the Delaware, as well as the impetus of the vessels, tended to push them upstream. On the other hand, the proof is that the mouth of the Schuylkill forms an eddy of dead water. With these two basic conditions, what would naturally happen? The Taurus, with the scows, came up the Delaware and rounded into the Schuylkill. She had several hundred feet of scows and hawsers following her. The scows were heavily loaded with sand and gravel, and naturally, from the impulse of the tug, the wind, and the tide, had a very considerable dead-weight straight-ahead impetus. It would therefore take some time for the Taurus to pull the first breast of barges out of the Delaware tide into the Schuylkill dead water, and it would take still further time to pull the last breast of the heavy-laden scows in the same direction. The result would naturally be that, while the Taurus may have been and probably did get to the westward of the channel herself, the tail end of her tow was considerably out into the mid-channel of the Schuylkill, and it would take time to straighten out her tow. We are satisfied, from the proof and the circumstances, that the tail of the tow was still in the channel when the collision occurred.

What, meanwhile, had happened to the Gulftrade? She came up under the same conditions, accompanied by the tugs Triton and Churchman, with the captain of the Triton on the bridge, controlling her navigation. Her length was substantially that of the Taurus's tow. When her bow, at the slow rate of speed she was going, was turned into the dead water of the Schuylkill, her stern was naturally swinging farther and farther up the Delaware, so that she, too, had to round up, also, from her position, and meanwhile, her stern being carried up the Delaware, her bow naturally tended over toward the western bank of the Schuylkill, and headed in that direction while she was being straightened out. Now it seems to us that both parties were in fault. When the whistle of the Gulftrade blew, the Taurus certainly was not in a position to let the Gulftrade pass in safety; but she nevertheless agreed that the Gulftrade come ahead. Later on the Gulftrade evidently became anxious, and blew another blast, to which the Taurus gave the same consent to go ahead; and while there is some question as to whether the Gulftrade blew a third blast, and got the same consent, we are inclined to think she did.

Now it seems to us that, under the circumstances, the Taurus was in fault in giving these three consents to the Gulftrade to come ahead, relying too much on her ability to get out of the channel. Evidently the Taurus miscalculated the situation. So, also, it seems the Gulftrade was at fault. She was the following vessel. All she had to do was to hold back, and not run into the scows. She certainly saw danger ahead when she gave the second signal, and she certainly saw it more imminent when she gave the third signal. It was quite clear that she did go ahead, and took an equal chance with the Taurus on the ability of the latter to give her free channelway to pass. The result was a needless collision. It seems to us that the seat of the trouble is the fact that large vessels want the tugs to get out of the road, and tugs want the big vessels to make a detour and keep out of their road. The case is not even one of an ocean vessel hurrying along on the high seas; but here both parties were making a maneuver at slow speed, and they could well afford the time to do it in a way and a delay that would have avoided this collision.

The decree below, as modified in accordance with these views, will therefore be affirmed.